UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

ALI REZA ZARGARAN,

      Debtor.
_____/

Case No. 14-24390-RBR
Chapter 7

KENNETH A. WELT, as Chapter 7 Trustee for
Ali Reza Zargaran,

      Plaintiff,

v.

ALI RAFIEE,

      Defendant.
_____/

Adv. Pro. No. 15-01083

### TRUSTEE'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

Kenneth A. Welt (the *"Plaintiff"*), the chapter 7 trustee for the estate (the *"Estate"*) of Ali Reza Zargaran (the *"Debtor"*) responds to Ali Rafiee's (the *"Defendant"*) Motion to Dismiss [ECF No. 10] (the *"Motion"*) and states:

### Introduction

The Trustee's complaint adequately pleads that the Defendant received a transfer of real property of the estate post-conversion which was void and avoidable under applicable law, and should be turned over. The Defendant is liable as an initial or subsequent transferee of various transfers. Nothing in the Motion articulates any basis under which the complaint is deficient. Accordingly the Court should decline to dismiss the complaint.

**Relevant Alleged Factual Background**

1. In June 1993, the Debtor incorporated Ali Reza Zargaran, M.D., P.A. (the *"Practice"*). Prior to the Petition Date, the Debtor was the sole shareholder in the Practice.

2. At some point prior to December, 2013, the Debtor opened an investment account with TD Ameritrade (the *"Investment Account"*).For some reason, the Investment Account was titled in the Practice's name, rather than that of the Debtor. For some time, the Debtor made regular trades of publicly traded stock within the Investment Account.

3. On the Petition Date, June 24, 2014, the Debtor filed a chapter 11 petition (the *"Petition"*). By filing the Petition, the Debtor's sole shareholder interest in the Practice was included in the Estate under section 541 of the Bankruptcy Code. The share in the Practice had significant value. However, on the morning of his conversion hearing, the Debtor made transfers (*"Transfers"*) depleting the balance in the Investment Account from in excess of $870,000.00 to only $383.86. Of those Transfers, approximately $462,000.00 was a transfer to a closing agent, who facilitated the purchase by the Debtor and Wife of the real property (*"Real Property"*) located at 10431 Springcroft Court, Helotes, TX 78023.

4. By the time the order converting the case was entered on October 27, 2014, all three Transfers had occurred and the Investment Account (and by extension the share) was worthless. On November 19, 2014, three weeks post-conversion, the Debtor and his wife transferred the Real Property to Defendant via Special Warranty Deed (the *"Rafiee Transfer"*).

5. The Trustee sued the Debtor and his wife in *Welt v. Zargaran* et al, 14-01894-RBR (Bankr.S.D.Fla. 2014), wherein the Trustee sought a determination that the Practice was the alter ego of the Debtor, that the Transfers were avoidable, and that the Real Property was

property of the Estate. The defendants were defaulted, and the Trustee believes the United States District Court will soon enter final judgment on the matter in the Trustee's favor.

6. Upon discovering the Rafiee Transfer, the Trustee initiated this action [ECF No. 1] (the *"Complaint"*). The Trustee is seeking a determination that the Real Property remains property of the Estate and for turnover, and alternatively to recover a judgment against the Defendant to avoid the Rafiee Transfer or a money judgment as a subsequent transferee.

7. The Defendant subsequently filed the Motion. As set forth below, the three-page motion does not adequately demonstrate any factual or legal basis for dismissal of the Complaint.

## Response

A. The claimed failure to allege certain facts is baseless.

8. In paragraphs 2 and 3 of the Motion, Defendant states that the Trustee has not alleged what the initial funding sources were for the Investment Account, whether subsequent deposits were the proceeds of the Practice, and also states the Trustee has not alleged what the nature of the debts of the Practice were.

9. The Defendant cites no case law which would suggest that such allegations are necessary, nor does the Defendant explain to which count(s) the Plaintiff's "failure" might be fatal. In fact, nowhere in paragraphs 2 or 3 does the Defendant suggest that the Complaint does not state a claim without such allegations. The Defendant simply points out a number of things which the Plaintiff does not allege. Because the Defendant does not explain or suggest how these "failures" affect the Complaint, the Plaintiff cannot and will not respond. Of course, the allegations in the Complaint *do* state a claim for each of the counts in the Complaint.

B. <u>The Plaintiff has alleged sufficient 'alter-ego' facts, even if it were necessary</u>

10. In the Motion, Defendant asserts that "Plaintiff is essentially, without pleading a claim of reversing the corporate veil, alleging that the [Practice] is liable for the debts of the debtor." However, in paragraph 32, the Plaintiff alleges that "by separate lawsuit *Welt v. Zargaran et al*, 14-01894-RBR (Bankr.S.D.Fla. 2014), the Trustee sought a determination that the Practice was the alter ego of the Debtor, that the Transfers were avoidable, and that the Real Property was property of the Estate." A default was entered in that case, and proposed findings of fact recommending alter ego and substantive consolidation were entered by the Bankruptcy Court, as S.D.Fla. Case No. 15-60409-WJZ, ECF No. 1.

11. First, Defendant cites no case law for the proposition that the Plaintiff must replead the underlying alter ego allegations against an alter ego or substantively consolidated entity. Certainly, the Defendant would not be a party to an alter ego action against the Practice. But even if repleading of the underlying facts were necessary, the Trustee more than meets his burden.

12. Defendant suggests that Plaintiff has failed to allege a basis that the corporate form was used for a fraudulent or improper purpose. Yet the Complaint alleges exactly that. The Complaint alleges that "By statute, pursuant to §621.03, Fla. Stat., a professional corporation, such as the Practice, is organized for the 'sole and specific purpose of rendering professional service.'" *Complaint,* ¶8. The Complaint also alleges that "the Investment Account was titled in the Practice's name," and "trading publicly traded securities in an investment account is not a 'professional service.'" *Complaint* ¶¶ 11 and 14. That is, the Complaint alleges exactly that the corporate form was used for a legally improper purpose.

4
LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

13. Moreover, an alter-ego determination is completely unnecessary for counts I and III. Whether or not the funds in the Investment Account were property of the Estate, the Real Property is assuredly included in the Estate because it was acquired by the Debtor on October 24, 2014, three days prior to the conversion. *Complaint,* ¶¶ 35-36. In a converted case, property of the estate includes post-petition, pre-conversion property acquired by the debtor. 11 U.S.C. § 1115(a)(2). So it does not matter whether the Investment Account was Property of the Estate, because of the date of the Rafiee Transfer, the Real Property unequivocally was Property of the Estate.

14. Finally, Defendant cites *In re Checiek*, 492 B.R. 918 (Bankr. M.D. Fla. 2013) for the proposition that "without a basis to allege as to the source of funds . . . plaintiff has not stated a cause of action that the real property is property of the estate." But *Checiek* has absolutely nothing to do with such a proposition. Instead, in *Checiek*, in ruling on whether the debtors could pierce their own corporate veil to exempt an asset owned by their corporation, the Court concluded that they could not do so "absent evidence that the corporate form was used for a fraudulent or improper purpose." But as stated in paragraph 13 above, the Plaintiff has alleged *exactly that*, even though an alter ego determination is unnecessary.

C. <u>The Plaintiff need not produce evidence of damage *in the Complaint*</u>

15. Defendant next cites *Abbott v. Arch Wood Protection Inc. (In re Wood Treaters, LLC)*, 491 B.R. 591, 597 (Bankr. M.D. Fla. 2013) in support of the assertion that the "trustee lacks standing because he has not stated a cause of action showing actual injury to the estate." But *Wood Treaters* stands for the opposite. Of course, the Trustee is required to prove damages *at trial*, but not in a complaint. In *Wood Treaters*, Judge Glenn noted that

> [T]he injury to the estate must be established as to each transfer alleged in the Complaint. **While the Trustee can plead his case in**

> **general terms**, he must offer [at trial] proof of every element of each particular cause of action for every transfer that he seeks to avoid."

*Id.*(emphasis added) (quotations omitted). In *Wood Treaters*, the Court dismissed the case for lack of standing following a *trial*, in which the plaintiff offered no evidence of damages. *Id.*

16. Of course, the Trustee could not have pleaded damages in this case when the Complaint was filed, because (as this Court is well aware) the Debtor has disappeared, leading to a writ of bodily attachment and a complete inability to investigate the Debtor's financial condition. To be clear, the Estate has no funds, and received nothing from the Rafiee Transfer (and has obviously been damaged), but the Trustee could not (and was not required to) plead that at the complaint stage, without knowing whether and what consideration was paid for the Rafiee Transfer or the disposition of such funds.

17. Finally, this Court has recognized that "courts should relax the specificity requirements where the plaintiff is a trustee in bankruptcy." *In re Arizen Homes, Inc.*, No. 07-15650-BKC-RBR, 2009 WL 393863, at *2 (Bankr. S.D. Fla. Jan. 22, 2009). Thus, even to the extent pleading of the damages were required, such requirement should be relaxed.

D. The Rafiee Transfer is void under 11 U.S.C. § 362 as violative of the automatic stay

18. The Defendant next cites *Burkart v. Coleman (In re Tippett)*, 542 F.3d 684 (9th Cir. 2008), to support his claim that the Rafiee transfer is not void,[1] but only possibly avoidable under 11 U.S.C. § 549. Importantly, even if the Court were to agree with the Defendant (and it should not), it should only dismiss Counts I and II, not III, IV and V. That is, even if the Rafiee Transfer is not void *ab initio* as violative of the automatic stay, even the Defendant concedes it is avoidable under section 549. It follows that if avoided, the turnover count (III) is necessary and appropriate.

---

[1] The Trustee concedes that Counts I or II are dependent on a judgment that the Rafiee Transfer was void.

19. But the Court should not dismiss Counts I or II because the Rafiee Transfer <u>is</u> void *ab initio*. There is a split of authority as to whether a transfer which could be governed by section 549 or 362 is subject to both, or just section 549. *New Orleans Airport Motel Associates, Ltd. v. Lee (In re Servico, Inc.)*, 144 B.R. 933 (Bankr.S.D.Fla.1992). In recognizing the split, Judge Cristol in *Servico* decided that the unauthorized post-petition transfer violative of the stay was void, despite that it might otherwise be avoidable under section 549. On the other hand, the case cited by Defendant, *Tippett*, which holds that section 549 is the Trustee's exclusive remedy, is neither persuasive nor controlling.

20. Instead, this Court should follow the well-reasoned opinion in *Gonzales v. Beery (In re Beery)*, 452 B.R. 825, 830 (Bankr. D.N.M. 2011). In *Beery*, the defendant argued that the "Trustee's only bankruptcy cause of action that permits her to obtain a declaration that the actions of Debtor were not effective to transfer the property is § 549 of the Code." *Id.* at 829. That is, the *Beery* defendant (also relying on *Tippett*) made the same arguments that the Defendant makes in this case.

21. The *Beery* court explained how *Tippett* was decided based on the Ninth Circuit's misconstrual (as binding) of two prior panel decisions based on debtors *in possession*. *Id*. at 832. The *Beery* court analyzed *Tippett*, noting that

> In each [prior panel decision], *Garcia* and *Schwartz*, the transactions that were challenged occurred when the debtors were debtors in possession in chapter 11 cases. Nevertheless both courts in their discussions refer only to "debtors" rather than debtors in possession. And in neither case did the debtors themselves take any action that constituted the transfer in question.
>
> But given the (perhaps too loose) phrasing used by both courts, the *Garcia/Schwartz* argument appears to have led the Ninth Circuit courts astray. The Tippetts, after filing their chapter 7 case, hired a realtor and sold their home without anyone's permission. Unfortunately for the chapter 7 trustee (and the unsecured creditors), the trustee had failed to record a notice of the filing of

> the bankruptcy case in Sacramento County, California, where the property was located. In consequence, the purchaser apparently took for value and in good faith. Shortly after the sale the chapter 7 trustee filed an action seeking turnover under § 542 (and not § 549), to quiet title, and to avoid the liens of purchaser's mortgagees. The purchaser and the mortgagees sought an annulment of the stay to retroactively validate their purchase. The bankruptcy court denied annulment, and granted judgment for the Trustee in the adversary proceeding. . . .
>
> [However, in *Tippett*], there was never a basis for arguing that they acted on behalf of the estate. That was a crucial difference between the underlying facts in *Garcia* and *Schwartz* on the one hand and the *Tippett* cases on the other hand. Thus, to the extent that *Garcia* and *Schwartz* do not distinguish between debtors versus debtors in possession, those cases also state the principle too broadly to be taken at face value.

*Id.* at 832-33. (internal citations omitted). As such, the *Beery* court concluded that it "is . . . clear that whether the debtor was a 'willing participant' in the alleged transfer makes no difference, and does not convert an attempted transfer in violation of the automatic stay into a transfer only voidable by § 549."

22.     The *Beery* court's well-reasoned opinion is, unlike *Tippett*, highly persuasive and consistent with the Bankruptcy Code. Here, the Debtor was no longer in possession (by three weeks) when the Rafiee Transfer was made. *Complaint*, ¶ 32. Unquestionably, the Debtor lacked authority to initiate the Rafiee Transfer. "[T]he trustee who is entitled to the protection of the automatic stay in order to preserve the estate intact. That is, in a chapter 7 case, a debtor can wreak as much havoc on the estate as can a creditor . . . In consequence, there is nothing in § 362(a) which says that its provisions are limited only to creditors and in the process excepting chapter 7 debtors (or chapter 11 debtors out of possession) from the prohibitions of § 362(a)." *Beery*, 452 B.R. at 832. It would be inconsistent with the purposes of the automatic stay to not

protect the trustee (and the estate) from such an *ultra vires* transfer. Accordingly, the automatic stay rendered the Rafiee Transfer void *ab initio*.[2]

### E.  The Defendant's remaining arguments are completely meritless

23.    In paragraph 8 of the Motion, Defendant argues that

> Counts IV and V are counts to avoid the transfer of property of the estate pursuant to 11 USC Section 549 and 550. As set forth above, the source of the funds as alleged was the PA Investment account. Any actual injury was to the P A, not to the trustee. Counts IV and V should be dismissed.

24.    Paragraph 9, in turn, states that Count IV should be dismissed because the Defendant is not an initial transferee. As is clear from the Complaint, the Real Property was property of the Estate (even without an alter ego judgment) on the date of the Rafiee Transfer. *See* paragraph 13 above. It follows that the Defendant was the initial transferee of the Rafiee Transfer (a direct transfer from the Debtor to the Defendant), the Estate suffered an injury in fact,[3] and Count IV states a cause of action.

25.    Count V, on the other hand, is different. Count V alleges that the Defendant is a "subsequent transferee"[4] of the transfers from the Investment Account to the Debtor and his wife. Indeed "once a trustee proves that a transfer is avoidable he may seek to recover against any transferee, initial or immediate, or an entity for whose benefit the transfer is made." 11 U.S.C. § 550(a)(2); *IBT Int'l Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 706 (11th Cir. 2005). The Trustee will soon have a judgment against the Debtor and his wife for the Transfers, and the Defendant is obviously a subsequent transferee of such transfers. Nothing

---

[2] The Defendant also cites *Wood Treaters* in support of this proposition, but neither the words "void," "automatic stay" nor any reference to section 362 appear there. Accordingly the Trustee believes the reference should be ignored as to this issue.

[3] Curiously, even if the "actual injury was to the PA," the Estate would still be injured by the devaluation of its interest in the PA.

[4] To be clear, the Trustee alleges that the Defendant is a subsequent transferee vis a vis the transfers from the Investment Account, but an immediate transferee vis a vis the Real Property.

proscribes the Trustee from pursuing a subsequent transferee prior to obtaining final judgment against an initial transferee. *Id.*

26.     Finally, the Defendant notes that Plaintiff has failed to specify a basis for a claim of attorney fees.  In Counts I, II, and III, the Trustee requests attorneys' fees "to the extent permitted by applicable law." Since those counts seek a determination that the Real Property is property of the Estate, and should be turned over to the Estate, it follows that the Defendant's failure to do so (if willful) is compensable under 11 U.S.C. § 362(k).

### Conclusion

Nothing in the Motion demonstrates the Defendant's entitlement to the relief sought. Most of its assertions are unsupported by authority, and some do not seem to be related to any relief. The Trustee's Complaint adequately pleads that the Rafiee Transfer was void; that the Real Property should be turned over; and that the Defendant is liable as an initial or subsequent transferee of various transfers. Accordingly the Court should decline to dismiss the Complaint.

Respectfully submitted,

s/ Lawrence E. Pecan
Lawrence E. Pecan, Esquire
Florida Bar No. 990866
lpecan@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Attorneys for Trustee*

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY THAT notice of the foregoing will be electronically mailed, by transmission of notices of electronic filing to Craig I Kelley on behalf of Interested Party Sabadell United Bank, N.A. at craig@kelleylawoffice.com, martha@kelleylawoffice.com, kelleyecfsouthern@gmail.com, leeann@kelleylawoffice.com; Lawrence E Pecan on behalf of Plaintiff Ken Welt at lpecan@melandrussin.com, ltannenbaum@melandrussin.com; mrbnefs@yahoo.com; and Jeffrey Solomon, Esq on behalf of Defendant Ali Rafiee at solomonjeffrey@hotmail.com, maria.solomonlaw@gmail.com.

                                          s/ Lawrence E. Pecan
                                          Lawrence E. Pecan, Esquire

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363