UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                    Case No. 14-24390-RBR
                                                          Chapter 7
ALI REZA ZARGARAN,

            Debtor.
_____/

KENNETH A. WELT, as chapter 7 trustee for          Adv. Pro. No. 15-01083-RBR
Ali Reza Zargaran,

            Plaintiff,

v.

ALI RAFIEE, FARIDEH HANIFY, and
MARYAM BAKER

            Defendants.
_____/

**AMENDED COMPLAINT
TO AVOID POST-PETITION TRANSFERS, FOR TURNOVER, AND
FOR DAMAGES FOR CIVIL CONSPIRACY AND AIDING AND ABETTING BREACH
OF FIDUCIARY DUTY, BANKRUPTCY FRAUD, AND CONSTRUCTIVE FRAUD**

Kenneth A. Welt, the Chapter 7 Trustee (the *"Trustee"*) for the bankruptcy estate of Ali

Reza Zargaran (the *"Debtor"*), by and through his undersigned counsel, amends his complaint

[ECF No. 1], sues Ali Rafiee (*"Rafiee"*), Maryam Baker (*"Debtor's Wife"*), and Farid150 Hanify

(*"Hanify"*), and states as follows:

**I.        PARTIES, JURISDICTION AND VENUE**

        **A.  Parties**

        1.      The Trustee is the duly authorized and acting Chapter 7 Trustee of the Debtor's

estate (the *"Estate"*) created pursuant to Section 541 of the Bankruptcy Code.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/5526/5526-3/01612014.DOC.}

2.      On June 24, 2014 (the ***"Petition Date"***), after the Debtor filed a voluntary petition (the ***"Chapter 11 Petition"***) for relief under chapter 11 of title 11 of the United States Code (the ***"Bankruptcy Code"***).

3.      Upon information and belief, Rafiee is *sui juris*, over eighteen years of age, a resident of Bexar County, Texas, and a citizen of Spain.

4.      Upon information and belief, the Debtor's Wife is *sui juris*, over eighteen years of age, and a resident of Bexar County, Texas

5.      Upon information and belief, Hanify is *sui juris*, over the eighteen years of age, and a resident of Miami-Dade County, Florida.

**B.  Jurisdiction and Venue**

6.      This Court has jurisdiction over the subject matter of this action pursuant to 11 U.S.C § 1334(b).

7.      This is a constitutionally non-core proceeding.

8.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**II.    GENERAL ALLEGATIONS**

9.      In June 1993, the Debtor incorporated Ali Reza Zargaran, M.D., P.A. (the ***"Practice"***).

10.     As of the Petition Date, the Debtor was the sole shareholder in the Practice.

11.     By statute, pursuant to §621.03, Fla. Stat., a professional corporation, such as the Practice, is organized for the "sole and specific purpose of rendering professional service."

12.     The Practice's sole business was the operation of a medical practice.

13.     At some point prior to December, 2013, the Debtor opened an investment account with TD Ameritrade (the ***"Investment Account"***).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5526/5526-3/01612014.DOC.}

14.     The Investment Account was titled in the Practice's name.

15.     The Debtor made regular trades of publicly traded stock within the Investment Account.

16.     Trading publicly traded securities in an investment account is not a "rendering professional service."

**A. The Practice and the Investment Account.**

17.     By filing the Chapter 11 Petition, the Debtor became a debtor-in-possession, with a fiduciary duty to manage the Estate for the benefit of the creditors.

18.     By filing the Chapter 11 Petition, the Debtor's sole shareholder interest in the Practice was included in the Estate under section 541 of the Bankruptcy Code.

19.     On Schedule B, line 13, the Debtor scheduled his interest in the Practice as valued at $526,108.39, which he described as follows:

> Ali Reza Zargaran, MD, P.A. Valuation determined by combining: bank balance (1938.59); accounts receivable (14,187); of ice furnishing/equipment (750); unencumbered portion of investment stock account (756,353.10); business liabilities (245,107.30).

(the ***"Scheduled Description"***).

20.     The Trustee believes the "business liabilities" to be unenforceable insider-debts allegedly owed to the Debtor's Wife.

21.     In any event, even assuming the "business liabilities" to be enforceable and pursuant to even the Debtor's Scheduled Description, the share in the Practice (the ***"Share"***) had a book value of $526,108.39.

22.     Pursuant to the claims register, the Debtor has in excess of $2,000,000.00 in unsecured (including undersecured) debt.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5526/5526-3/01612014.DOC.}

23.     As a debtor-in-possession, the Debtor had a duty to administer the Share for the benefit of his creditors.

**B. With conversion to chapter 7 imminent, the Debtor empties the Investment Account and buys the  Real Property**

24.     On October 2, 2014, the United States Trustee (the **"UST"**) filed his *Motion to Convert or Dismiss Case* (the **"UST Motion to Convert"**).

25.     On October 17, 2014 and October 20, 2014, both Sabadell United Bank, N.A. and Transcapital Bank (respectively) joined in the UST Motion to Convert and also sought conversion.

26.     The UST Motion to Convert was set for hearing on October 23, 2014.

27.     That very morning, on October 23, 2014, the Debtor requested the following wire transfers be made from the Investment Account:

    a)      A $462,489.53 transfer to Cornerstone Title San Antonio (the **"Cornerstone Transfer"**); and

    b)      A $401,510.00 transfer to account number 114021933, titled in the Debtor's name, at Broadway National Bank (the **"First Broadway Transfer"**).

28.     On October 24, 2014, the Debtor initiated a second transfer to the same account at Broadway National Bank in the amount of $11,162.30 (the **"Second Broadway Transfer"**)[1].

29.     Over the next few weeks, the Broadway National Bank account was emptied and withdrawn as cash (the **"Broadway Cash Withdrawals"**).

---

[1] Collectively the Cornerstone Transfer, the First Broadway Transfer and Second Broadway Transfer are referred to as the **"Pre-Conversion Transfers."**

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5526/5526-3/01612014.DOC.}

30.     Through the Cornerstone Transfer, First Broadway Transfer, and Second Broadway Transfer, the Debtor depleted the balance in the Investment Account from in excess of $870,000.00 to only $383.86.

31.     By the time the order converting the case (the **"Conversion Order"**) was entered on October 27, 2014, the three Pre-Conversion Transfers had occurred and the Investment Account (and by extension the Share) was worthless.

32.     The Cornerstone Transfer was a transfer to a closing agent, who facilitated the purchase by the Debtor and Debtor's Wife of certain real property (**"Real Property"**) located at 10431 Springcroft Court, Helotes, TX 78023, described as: CB 4557A (BRIDGEPOINT UT-8 & 15), BLOCK 8 LOT 20 for approximately $462,489.53.

33.     Accordingly, the Debtor and the Debtor's Wife acquired title to the Real Property from RH of Texas Limited Partnership on October 24, 2014 by a special warranty deed (the **"Zargaran Deed"**) recorded in the official records of Bexar County Texas at Book 16930, Page 405. A Copy of the Zargaran Deed is attached as **Exhibit A**.

34.     On November 12, 2014, just two weeks later, the Debtor and Debtor's Wife entered into an agreement with Rafiee (the **"Contract"**) to sell the Real Property to Rafiee for $375,000.00. The sale price was approximately $85,000 less than the purchase price paid just two weeks earlier. A copy of the Contract is attached as **Exhibit B.**

35.     The Contract required no earnest money deposit by Rafiee.

36.     The Contract required a closing within 15 days.

37.     On November 19, 2014, seven (7) days after contract execution, the Debtor and Debtor's Wife transferred the Real Property to Rafiee via Special Warranty Deed (the **"Rafiee**

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5526/5526-3/01612014.DOC.}

*Transfer"*). A copy of the Special Warranty Deed evidencing the Rafiee Transfer is attached as **Exhibit C.**

38.    Had Rafiee attempted to obtain title insurance, upon information and belief, the title insurance underwriter would have run a national bankruptcy search and refused to underwrite a policy.

39.    Had Rafiee attempted to obtain title insurance, upon information and belief, the title insurance underwriter would have refused to underwrite a policy because the sale was to be executed less than 30 days after the previous sale.

40.    Rafiee allegedly purchased the Real Property for $375,000.00 cash.

**C.  The apparent relationship between the Debtor, Debtor's Wife, Rafiee, and Hanify**

41.    Hanify's full name is Farideh Hanify.

42.    According to Rafiee's driver license, Rafiee's full name is Ali Hanify Rafiee. A copy of Rafiee's driver license is attached as **Exhibit D**.

43.    Upon information and belief, Rafiee is Hanify's son.

44.    Upon information and belief, Maryam Baker's full name is Maryam Rafiee Baker, having been changed to Maryam Baker when she married Thomas Baker in 1987, whom she divorced in 1997.

45.    The address on Hanify's driver license is 1300 Northeast Miami Gardens Drive, #519E, Miami Gardens, FL 33179.  A copy of Hanify's driver license is attached as **Exhibit E**.

46.    As set forth in book 17466, page 2154 of the official records of Miami Dade County, Debtor's Wife has owned the property at 1300 Northeast Miami Gardens Drive, #519E, Miami Gardens, FL 33179 since 1996.  A copy of the deed evidencing Debtor's Wife's ownership of such property is attached as **Exhibit F**.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5526/5526-3/01612014.DOC.}

47.     Accordingly Hanify lives in a condominium owned by Debtor's Wife.

48.     Upon information and belief, Rafiee is Debtor's Wife's brother, and their mother is Hanify.

49.     Upon information and belief, Rafiee is the Debtor's brother-in-law.

50.     Thus, upon information and belief, the parties are related as follows:



**D.  The Leaseback to the Debtor and Debtor's Wife and Suspicion Circumstances of the Transaction**

51.     Because of the close, family relationship, upon information and belief, Rafiee had knowledge of the Debtor's bankruptcy at the time of the Rafiee Transfer.

52.     Rafiee purchased the Real Property without seeing the Real Property.

53.     Rafiee purchased the Real Property without obtaining title insurance.

54.     Rafiee entered into a lease (the ***"Lease"*** and together with the Rafiee Transfer and the Contract, the ***"Transaction"***) with Debtor and Debtor's Wife to lease the Real Property to Debtor and Debtor's Wife until December 31, 2015 for no consideration. A copy of the Lease is

attached as **Exhibit G**.  The lease was subject to cancellation by either party upon thirty (30) days' notice.

      55.     Upon information and belief, Rafiee consummated the Transaction to assist the Debtor in defrauding the Debtor's creditors and the bankruptcy estate.

      56.     Rafiee's knowledge of the fraud and the bankruptcy can be inferred from the facts that:

      a)     Rafiee paid at least $85,000.00 less than reasonably equivalent value for the Real Property;

      b)     the Real Property was purchased by the Debtor and the Debtor's Wife for $462,489.53, and sold to Rafiee for $85,000.00 less just two weeks later;

      c)     Rafiee, the Debtor and Debtor's Wife entered into a one-year leaseback for no consideration;

      d)     Rafiee was not required to make a deposit under the Contract;

      e)     Rafiee did not obtain title insurance; and

      f)     Rafiee purchased the Real Property sight unseen.

      57.     Even if Rafiee had no knowledge of the bankruptcy, Rafiee is not a good faith purchaser because he was on inquiry notice of the fraudulent nature of the Transaction in that

      a)     Rafiee paid at least $85,000.00 less than reasonably equivalent value for the Real Property;

      b)     the Real Property was purchased by the Debtor and the Debtor's Wife for $462,489.53, and sold for $85,000.00 less just two weeks later;

      c)     the Debtor and Debtor's Wife entered into a one-year leaseback for no consideration; and

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5526/5526-3/01612014.DOC.}

      d)      Rafiee was not required to make a deposit under the Contract.

58.     Additionally, even if Rafiee had no knowledge of the bankruptcy, Rafiee is not a good faith purchaser because, upon information and belief, he is an insider of the Debtor.

59.     After the Pre-Conversion Transfers and the Rafiee Transfer, the Court entered a writ of bodily attachment. Upon information and belief, the Debtor subsequently fled to Iran.

**COUNT I**
**POSTPETITION TRANSFER**
**11 U.S.C. §§ 549 and 550**
**(against Rafiee)**

60.     The Trustee reasserts the allegations contained in paragraphs 1 - 59 as if fully set forth herein.

61.     This is a claim to avoid and recover the Rafiee Transfer on the theory that the Real Property was property of the estate, as it was acquired as community property prior to the entry of the Conversion Order. This claim does not allege or depend on an alter ego or substantive consolidation finding as to the Practice.

62.     The Real Property was acquired on October 24, 2014.

63.     The case was converted on October 27, 2014.

64.     The Trustee is informed and believes that on October 24, 2014, the Debtor and Debtor's Wife took record title to the Real Property as community property.

65.     The Real Property was under the sole, equal, or joint management and control of the Debtor.

66.     Under 11 U.S.C. § 541(a)(2)(A), property of the estate includes "all interests of the debtor and the debtor's spouse in community property . . . that is under the sole, equal or joint management of the debtor."

9

67.     Pursuant to 11 U.S.C. § 1115, in a converted case, property of the estate includes post-petition, pre-conversion "property of the kind specified in section 541" acquired by a debtor.

68.     The Real Property, which was acquired before conversion, and was community property, was under the sole, equal, or joint management and control of the Debtor, and was therefore property of the Estate on October 24, and October 27th, when the case was converted.

69.     The Real Property remained property of the Estate until the date of the Rafiee Transfer, three weeks after the conversion.

70.     The Rafiee Transfer was a transfer of property of the Estate.

71.     The Rafiee Transfer occurred after the commencement of the case.

72.     The Rafiee Transfer was not authorized by the Bankruptcy Code or an order of the Court.

73.     The Real Property should have been available for liquidation and distribution to creditors of the Estate, and would have been but for the Rafiee Transfer.

74.     The Estate received no consideration, value or proceeds from the Rafiee Transfer and was therefore damaged.

**WHEREFORE**, the Trustee respectfully requests the Court to enter a judgment against Rafiee avoiding the Rafiee Transfer, and to the extent avoidance does not make the Trustee whole, that the Court enter judgment against Rafiee for the value of the Rafiee Transfer and any further relief that this Court deems just, fair and equitable.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5526/5526-3/01612014.DOC.}

## COUNT II
## POSTPETITION TRANSFER
### 11 U.S.C. §§ 549 and 550
### (against Rafiee)
### (in the alternative to Count I)

75. The Trustee reasserts the allegations contained in paragraphs 1 – 59 as if fully set forth herein.

76. Even if the Real Property was not property of the estate under 11 U.S.C. §§ 1115 and 541, it was property of the estate because it was purchased with assets that were proceeds of the Debtor's alter ego, the Practice, which should also be substantively consolidated into the Estate.

77. At all material times, the Debtor has exercised complete dominion and control of the Practice.

78. The Debtor has always had signature authority over the Investment Account.

79. The assets of the Investment Account were used for the benefit of the Debtor, not the Practice's benefit.

80. The Pre-Conversion Transfers did not observe corporate formalities, and evidence the Debtor's beneficial ownership of the Investment Account, and the use of the Practice as the Debtor's instrumentality.

81. The Debtor utilized the Practice as his mere instrumentality in order to defraud his creditors by titling assets which he owned in the name of the Practice.

82. The Debtor has disregarded the corporate formalities of the Practice.

83. There is a degree of difficulty in segregating and ascertaining the individual assets and liabilities of the Debtor and the Practice.

84. The Debtor has commingled the assets of Practice with his own assets.

11

85.    There is a unity of interest in the Practice given that the Debtor owned the Practice.

86.    The Debtor has exercised control over assets of the practice and transferred assets of the Practice without formal observance of corporate formalities.

87.    The finances of the Debtor and the Practice are so intermingled that administration of the Debtor's bankruptcy estate without the Practice would leave creditors of the Debtor without assets, including causes of action that the Debtor's creditors could use to satisfy debts owed to them.

88.    Given the identity of interest between the Debtor and Practice, it is necessary and appropriate that business affairs of the Practice be administered and resolved in conjunction with the affairs of the Debtor in his bankruptcy case.

89.    Additionally, substantive consolidation is necessary to insure the equitable treatment of all creditors, in that the creditors of the Debtor will receive a smaller share of assets if the Practice is not brought into these proceedings, allowing the Debtor to shield assets through Practice.

90.    Thus, the assets of the Practice are and were assets of the Debtor.

91.    The Pre-Conversion Transfers were transfers of property of the Estate.

92.    The Pre-Conversion Transfers occurred after the commencement of the case.

93.    The Pre-Conversion Transfers were not authorized by the Bankruptcy Code or an order of the Court.

94.    The Real Property should have been available for liquidation and distribution to creditors of the Estate, and would have been but for the Rafiee Transfer.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5526/5526-3/01612014.DOC.}

95.     The Estate received no consideration, value or proceeds from the Rafiee Transfer and was therefore damaged.

96.     The Debtor and Debtor's Wife were the transferees of the Pre-Conversion Transfers.

97.     Rafiee is a subsequent transferee of the Pre-Conversion Transfers by virtue of the Rafiee Transfer.

**WHEREFORE**, the Trustee respectfully requests the Court to enter a judgment against Rafiee avoiding the Rafiee Transfer, and to the extent avoidance does not make the Trustee whole, that the Court enter Judgment against Rafiee for the value of the Rafiee Transfer and any further relief that this Court deems just, fair and equitable.

**COUNT III**
**TURNOVER PURSUANT TO 11 U.S.C. § 542**
*(Against Rafiee)*
*(Based on a Judgment on Counts I or II)*

98.     The Trustee reasserts the allegations contained in paragraphs 1 - 59 as if fully set forth herein.

99.     The Real Property is property of the Debtor's bankruptcy estate and must be turned over to the Trustee.

100.    Any and all monies earned by the Real Property are property of the Estate.

**WHEREFORE,** the Trustee respectfully requests the Court to enter a judgment in favor of the Trustee and against Rafiee directing Rafiee to:

A.      Turn over the Real Property to the Trustee, as well as all monies received therefrom; and

B.      Granting any and all further relief this Court deems fair and equitable.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5526/5526-3/01612014.DOC.}

## COUNT IV
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
## BY DEBTOR AS DEBTOR-IN-POSSESSION
### *(Against Hanify, Rafiee and Debtor's Wife)*

101.    The Trustee reasserts the allegations contained in paragraphs 1 - 59 as if fully set forth herein.

102.    The Debtor had a fiduciary duty to the Estate, as a result of having the duties and obligations as a debtor-in-possession under chapter 11.

103.    The Debtor breached that fiduciary duty by making the Pre-Conversion Transfers which benefitted himself, his wife, and his family.  The Pre-Conversion Transfers harmed the Estate.

104.    Upon information and belief, Rafiee had knowledge of this breach of fiduciary duty, which can be inferred due to his close, familial, relationship to the Debtor, and the suspicious circumstances concerning the Transaction.

105.    Rafiee rendered substantial assistance to the Debtor in breaching the fiduciary duty by buying the Real Property, and leasing the Real Property back to the Debtor for no consideration.

106.     Upon information and belief, Debtor's Wife had knowledge of this breach of fiduciary duty, which can be inferred due to their spousal relationship, the benefit to her and her family, and her signature on documents necessary to purchase the Real Property and consummate the Transaction.

107.    Debtor's Wife rendered substantial assistance to the Debtor in breaching the fiduciary duty by moving to Texas from Florida, and agreeing to buy and sell the Real Property and lease it from Rafiee.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5526/5526-3/01612014.DOC.}

108.    Upon information and belief, Hanify, as the Debtor's mother-in-law, had knowledge of this breach of fiduciary duty, which can be inferred due to their familial relationship, the benefit to the family, and her repeated refusal to answer the door of her condominium to be served with a subpoena.

109.    Upon information and belief, Hanify provided substantial assistance to the Debtor in breaching this fiduciary duty by bringing the cash proceeds from the Broadway Cash Withdrawals to Iran during multiple trips from the United States to Iran.

110.    The Estate has been damaged by the actions of Hanify, Rafiee, and Debtor's Wife in aiding and abetting the Debtor's breach of fiduciary duty.

**WHEREFORE**, the Trustee respectfully requests the Court to enter a judgment against Hanify, Rafiee, and Debtor's Wife in the amount of $875,161.83 or such other amount proved at trial, enter punitive damages, and any further relief that this Court deems just, fair and equitable.

**COUNT V**
**CIVIL CONSPIRACY**
**TO BREACH OF FIDUCIARY DUTY**
**BY DEBTOR AS DEBTOR-IN-POSSESSION**
*(Against Hanify, Rafiee and Debtor's Wife)*

111.    The Trustee reasserts the allegations contained in paragraphs 1 - 59 as if fully set forth herein.

112.    The Debtor had a fiduciary duty to the Estate, as a result of having the duties and obligations as a debtor-in-possession under chapter 11.

113.    The Debtor breached that fiduciary duty by making the Pre-Conversion Transfers which benefitted himself, his wife, and his family, but not the Estate.

15

114.    Upon information and belief, Rafiee had knowledge this breach of fiduciary duty, which can be inferred due to his close, familial, relationship to the Debtor, and the suspicious circumstances concerning the Transaction.

115.    Rafiee moved to Texas from Spain, bought the Real Property and leased the Real Property back to the Debtor no consideration.

116.    Upon information and belief, Debtor's Wife, as the Debtor's spouse, had knowledge of this breach of fiduciary duty, which can be inferred due to their spousal relationship, the benefit to her and her family, and her signature on documents necessary to purchase the Real Property and consummate the Transaction.

117.    Debtor's Wife moved to Texas from Florida, and agreed to buy and sell the Real Property.

118.    Upon information and belief, Hanify, as the Debtor's mother-in-law, had knowledge of this breach of fiduciary duty, which can be inferred due to their familial relationship, the benefit to her and her family, and her repeated refusal to answer the door of her condominium to be served with a subpoena.

119.    Upon information and belief, Hanify brought the cash proceeds from the Broadway Cash Withdrawals to Iran during multiple trips from the United States to Iran.

120.    Based on, among other things, the actions of Hanify, Debtor's Wife, and Rafiee, including the Lease and the Contract, all of which together were necessary to consummate the breach of fiduciary duty by the Debtor, there was an agreement among Hanify, Debtor's Wife, Rafiee and the Debtor to defraud or otherwise misappropriate assets of the Estate, which are unlawful acts.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5526/5526-3/01612014.DOC.}

121.    As set forth above, each performed some overt act in furtherance of the conspiracy.

122.    The Estate has been damaged by the breach of fiduciary duty.

**WHEREFORE**, the Trustee respectfully requests the Court to enter a judgment against Hanify, Rafiee, and Debtor's Wife in the amount of $875,161.83 or such other amount proved at trial, enter punitive damages, and any further relief that this Court deems just, fair and equitable.

## COUNT VI
## AIDING AND ABETTING
## BREACH OF FIDUCIARY DUTY
## BY DEBTOR AS DIRECTOR OF THE PRACTICE
### (Against Hanify, Rafiee and Debtor's Wife)

123.    The Trustee reasserts the allegations contained in paragraphs 1 - 59 as if fully set forth herein.

124.    As a director of the Practice, the Debtor had a duty to the Practice's shareholders.

125.    At the time of the Pre-Conversion Transfers, the chapter 11 estate was the shareholder of the Practice.

126.    Accordingly, the Debtor had a fiduciary duty to the Estate.

127.    The Debtor breached that fiduciary duty by making the Pre-Conversion Transfers which benefitted himself, his wife, and his family, but harmed the Estate.

128.    Following this breach of fiduciary duty, and after the entry of a writ of bodily attachment by the Court, the Debtor fled the United States for Iran.

129.    Upon information and belief, Rafiee had knowledge of this breach of fiduciary duty, which can be inferred due to his close, familial, relationship to the Debtor, and the suspicious circumstances concerning the Transaction.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5526/5526-3/01612014.DOC.}

130.    Rafiee rendered substantial assistance to the Debtor in breaching the fiduciary duty by buying the Real Property, and leasing the Real Property back to the Debtor for no consideration.

131.    Upon information and belief, Debtor's Wife had knowledge of this breach of fiduciary duty, which can be inferred due to their spousal relationship, the benefit to her and her family, and her signature on documents necessary to purchase the Real Property and consummate the Transaction.

132.    Debtor's Wife rendered substantial assistance to the Debtor in breaching the fiduciary duty by moving to Texas from Florida, and agreeing to buy and sell the Real Property and lease it from Rafiee.

133.    Upon information and belief, Hanify, as the Debtor's mother-in-law, had knowledge of this breach of fiduciary duty, which can be inferred due to their familial relationship, the benefit to her and her family, and her repeated refusal to answer the door of her condominium to be served with a subpoena.

134.    Upon information and belief, Hanify provided substantial assistance to the Debtor in breaching this fiduciary duty by bringing the cash proceeds from the Broadway Cash Withdrawals to Iran during multiple trips from the United States to Iran.

135.    The Estate has been damaged by the actions of Hanify, Rafiee, and Debtor's Wife in aiding and abetting the Debtor's breach of fiduciary duty.

**WHEREFORE**, the Trustee respectfully requests the Court to enter a judgment against Hanify, Rafiee, and Debtor's Wife in the amount of $875,161.83 or such other amount proved at trial, enter punitive damages, and any further relief that this Court deems just, fair and equitable.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5526/5526-3/01612014.DOC.}

# COUNT VII
## CIVIL CONSPIRACY
## TO BREACH FIDUCIARY DUTY
## BY DEBTOR AS DIRECTOR OF THE PRACTICE
### *(Against Hanify, Rafiee and Debtor's Wife)*

136.    The Trustee reasserts the allegations contained in paragraphs 1 - 59 as if fully set forth herein.

137.    As a director of the Practice, the Debtor had a duty to the Practice's shareholders.

138.    At the time of the Transfers, the chapter 11 estate was the shareholder of the Practice.

139.    Accordingly, the Debtor had a fiduciary duty to the Estate.

140.    The Debtor breached that fiduciary duty by making the Pre-Conversion Transfers which benefitted himself, his wife, and his family, but not the Estate.

141.    Following this breach of fiduciary duty, and after the entry of a writ of bodily attachment by the Court, the Debtor fled the United States for Iran.

142.    Upon information and belief, Rafiee had knowledge this breach of fiduciary duty, which can be inferred due to his close, familial, relationship to the Debtor, and the suspicious circumstances concerning the Transaction.

143.    Rafiee moved to Texas from Spain, bought the Real Property and leased the Real Property back to the Debtor for free.

144.     Upon information and belief, Debtor's Wife, as the Debtor's spouse, had knowledge of this breach of fiduciary duty, which can be inferred due to their spousal relationship, the benefit to her and her family, and her signature on documents necessary to purchase the Real Property and consummate the Transaction.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/5526/5526-3/01612014.DOC.}

145.    Debtor's Wife moved to Texas from Florida, and agreed to buy and sell the Real Property.

146.    Upon information and belief, Hanify, as the Debtor's mother-in-law, had knowledge of this breach of fiduciary duty, which can be inferred due to their familial relationship, the benefit to her and her family, and her repeated refusal to answer the door of her condominium to be served with a subpoena.

147.    Upon information and belief, Hanify brought the cash proceeds from the Broadway Cash Withdrawals to Iran during multiple trips from the United States to Iran.

148.    Based on, among other things, the actions of Hanify, Debtor's Wife, and Rafiee, including the Lease and the Contract, all of which together were necessary to consummate the breach of fiduciary duty by the Debtor, there was an agreement among Hanify, Debtor's Wife, Rafiee and the Debtor to defraud or otherwise misappropriate assets of the Estate, which are unlawful acts.

149.    As set forth above, each performed some overt act in furtherance of the conspiracy.

150.    The Estate has been damaged by the breach of fiduciary duty.

**WHEREFORE**, the Trustee respectfully requests the Court to enter a judgment against Hanify, Rafiee, and Debtor's Wife in the amount of $875,161.83 or such other amount proved at trial, enter punitive damages, and any further relief that this Court deems just, fair and equitable.

### COUNT VIII
### AIDING AND ABETTING
### BANKRUPTCY FRAUD
### *(Against Hanify, Rafiee and Debtor's Wife)*

151.    The Trustee reasserts the allegations contained in paragraphs 1 - 59 as if fully set forth herein.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5526/5526-3/01612014.DOC.}

152.    The Debtor was a primary wrongdoer in that he violated 18 U.S.C. §§ 152, 153 and 157 by appropriating Estate assets for his own use by virtue of his Pre-Conversion Transfers.

153.    Following these violations, and after the entry of a writ of bodily attachment by the Court, the Debtor fled the United States for Iran.

154.    Upon information and belief, Rafiee had knowledge of these violations, which can be inferred due to his close, familial, relationship to the Debtor, and the suspicious circumstances concerning the Transaction.

155.    Rafiee rendered substantial assistance to the Debtor by buying the Real Property, and leasing the Real Property back to the Debtor for no consideration.

156.    Upon information and belief, Debtor's Wife had knowledge of these violations, which can be inferred due to their spousal relationship, the benefit to her and her family, and her signature on documents necessary to purchase the Real Property and consummate the Transaction.

157.    Debtor's Wife rendered substantial assistance to the Debtor by moving to Texas from Florida, and agreeing to buy and sell the Real Property and lease it from Rafiee.

158.    Upon information and belief, Hanify, as the Debtor's mother-in-law, had knowledge of these violations, which can be inferred due to their familial relationship, the benefit to her and her family, and her repeated refusal to answer the door of her condominium to be served with a subpoena.

159.    Upon information and belief, Hanify provided substantial assistance to the Debtor by bringing the cash proceeds from the Broadway Cash Withdrawals to Iran during multiple trips from the United States to Iran.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5526/5526-3/01612014.DOC.}

160.    The Estate has been damaged by the actions of Hanify, Rafiee, and Debtor's Wife in aiding and abetting the Debtor's bankruptcy fraud.

**WHEREFORE**, the Trustee respectfully requests the Court to enter a judgment against Hanify, Rafiee, and Debtor's Wife in the amount of $875,161.83 or such other amount proved at trial, enter punitive damages, and any further relief that this Court deems just, fair and equitable.

**COUNT IX**
**CIVIL CONSPIRACY**
**TO COMMIT BANKRUPTCY FRAUD**
*(Against Hanify, Rafiee and Debtor's Wife)*

161.    The Trustee reasserts the allegations contained in paragraphs 1 - 59 as if fully set forth herein.

162.    The Debtor committed an unlawful act in that he violated 18 U.S.C. §§ 152, 153 and 157 by appropriating Estate assets for his own use by virtue of his Pre-Conversion Transfers.

163.    Upon information and belief, Rafiee had knowledge of these violations, which can be inferred due to his close, familial, relationship to the Debtor, and the suspicious circumstances concerning the Transaction.

164.    Rafiee moved to Texas from Spain, bought the Real Property and leased the Real Property back to the Debtor for free.

165.    Upon information and belief, Debtor's Wife, as the Debtor's spouse, had knowledge of these violations, which can be inferred due to their spousal relationship, the benefit to her and her family, and her signature on documents necessary to purchase the Real Property and consummate the Transaction.

166.    Debtor's Wife moved to Texas from Florida, and agreed to buy and sell the Real Property.

22

167.    Upon information and belief, Hanify, as the Debtor's mother-in-law, had knowledge of these violations, which can be inferred due to their familial relationship, the benefit to her and her family, and her repeated refusal to answer the door of her condominium to be served with a subpoena.

168.    Upon information and belief, Hanify brought the cash proceeds from the Broadway Cash Withdrawals to Iran during multiple trips from the United States to Iran.

169.    Based on, among other things, the actions of Hanify, Debtor's Wife, and Rafiee, including the Lease and the Contract, all of which together were necessary to consummate the unlawful acts by the Debtor, there was an agreement among Hanify, Debtor's Wife, Rafiee and the Debtor to defraud or otherwise misappropriate assets of the Estate, which are unlawful acts.

170.    As set forth above, each performed some overt act in furtherance of the conspiracy.

171.    The Estate has been damaged by the bankruptcy fraud.

**WHEREFORE**, the Trustee respectfully requests the Court to enter a judgment against Hanify, Rafiee, and Debtor's Wife in the amount of $875,161.83 or such other amount proved at trial, enter punitive damages, and any further relief that this Court deems just, fair and equitable.

### COUNT X
### AIDING AND ABETTING
### <u>CONSTRUCTIVE FRAUD</u>
*(Against Hanify, Rafiee and Debtor's Wife)*

172.    The Trustee reasserts the allegations contained in paragraphs 1 - 59 as if fully set forth herein.

173.    The Debtor owed a duty to the Estate under a confidential or fiduciary relationship.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/5526/5526-3/01612014.DOC.}

174.    The Pre-Conversion Transfers constitute an abuse of the confidential or fiduciary relationship.

175.    The Pre-Conversion Transfers constitute the unfair taking advantage of the Estate.

176.    Following these violations, and after the entry of a writ of bodily attachment by the Court, the Debtor fled the United States for Iran.

177.    Upon information and belief, Rafiee had knowledge of these constructively fraudulent actions, which can be inferred due to his close, familial, relationship to the Debtor, and the suspicious circumstances concerning the Transaction.

178.    Rafiee rendered substantial assistance to the Debtor by buying the Real Property, and leasing the Real Property back to the Debtor for no consideration.

179.    Upon information and belief, Debtor's Wife had knowledge of these constructively fraudulent actions, which can be inferred due to their spousal relationship, the benefit to her and her family, and her signature on documents necessary to purchase the Real Property and consummate the Transaction.

180.    Debtor's Wife rendered substantial assistance to the Debtor by moving to Texas from Florida, and agreeing to buy and sell the Real Property and lease it from Rafiee.

181.    Upon information and belief, Hanify, as the Debtor's mother-in-law, had knowledge of these constructively fraudulent actions, which can be inferred due to their familial relationship, the benefit to her and her family, and her repeated refusal to answer the door of her condominium to be served with a subpoena.

182.    Upon information and belief, Hanify provided substantial assistance to the Debtor by bringing the cash proceeds from the Broadway Cash Withdrawals to Iran during multiple trips from the United States to Iran.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5526/5526-3/01612014.DOC.}

183.    The Estate has been damaged by the actions of Hanify, Rafiee, and Debtor's Wife in aiding and abetting the Debtor's constructive fraud.

**WHEREFORE**, the Trustee respectfully requests the Court to enter a judgment against Hanify, Rafiee, and Debtor's Wife in the amount of $875,161.83 or such other amount proved at trial, enter punitive damages, and any further relief that this Court deems just, fair and equitable.

**COUNT XI**
**CIVIL CONSPIRACY TO**
**CONSTRUCTIVELY DEFRAUD THE BANKRUPTCY ESTATE**
*(Against Hanify, Rafiee and Debtor's Wife)*

184.    The Trustee reasserts the allegations contained in paragraphs 1 - 59 as if fully set forth herein.

185.    The Debtor owed a duty to the Estate under a confidential or fiduciary relationship.

186.    The Pre-Conversion Transfers constitute an abuse of the confidential or fiduciary relationship.

187.    The Pre-Conversion Transfers constitute the unfair taking advantage of the Estate.

188.    Following these violations, and after the entry of a writ of bodily attachment by the Court, the Debtor fled the United States for Iran.

189.    Upon information and belief, Rafiee had knowledge of these constructively fraudulent actions, which can be inferred due to his close, familial, relationship to the Debtor, and the suspicious circumstances concerning the Transaction.

190.    Rafiee moved to Texas from Spain, bought the Real Property and leased the Real Property back to the Debtor for free.

191.     Upon information and belief, Debtor's Wife, as the Debtor's spouse, had knowledge of these constructively fraudulent actions, which can be inferred due to their spousal

25

relationship, the benefit to her and her family, and her signature on documents necessary to purchase the Real Property and consummate the Transaction.

192.    Debtor's Wife moved to Texas from Florida, and agreed to buy and sell the Real Property.

193.    Upon information and belief, Hanify, as the Debtor's mother-in-law, had knowledge of these constructively fraudulent actions, which can be inferred due to their familial relationship, the benefit to her and her family, and her repeated refusal to answer the door of her condominium to be served with a subpoena.

194.    Upon information and belief, Hanify brought the cash proceeds from the Broadway Cash Withdrawals to Iran during multiple trips from the United States to Iran.

195.    Based on, among other things, the actions of Hanify, Debtor's Wife, and Rafiee, including the Lease and the Contract, all of which together were necessary to consummate the unlawful acts by the Debtor, there was an agreement among Hanify, Debtor's Wife, Rafiee and the Debtor to defraud or otherwise misappropriate assets of the Estate, which are unlawful acts.

196.    As set forth above, each performed some overt act in furtherance of the conspiracy.

197.    The Estate has been damaged by the constructive fraud.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5526/5526-3/01612014.DOC.}

**WHEREFORE**, the Trustee respectfully requests the Court to enter a judgment against Hanify, Rafiee, and Debtor's Wife in the amount of $875,161.83 or such other amount proved at trial, enter punitive damages, and any further relief that this Court deems just, fair and equitable.

Dated: May 15, 2015.

s/ Lawrence E. Pecan
Lawrence E. Pecan, Esquire
Florida Bar No. 990866
lpecan@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221
*Attorneys for Trustee*

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/5526/5526-3/01612014.DOC.}

3400
#10596

**Notice of confidentiality rights: If you are a natural person, you may remove or strike any or all of the following information from any instrument that transfers an interest in real property before it is filed of record in the public records: your social security number or your driver's license number.**

### SPECIAL WARRANTY DEED

**THE STATE OF TEXAS**

**COUNTY OF    BEXAR**

                        **KNOW ALL MEN BY THESE PRESENTS:**

**RH OF TEXAS LIMITED PARTNERSHIP, A MARYLAND LIMITED PARTNERSHIP,** acting herein by and through its duly authorized and undersigned officer, owning property in the County of **BEXAR**, Texas, hereinafter called "Grantor" (whether one or more), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to Grantor in hand paid by **ALI ZARGARAN AND MARYAM BAKER, HUSBAND AND WIFE**, hereinafter called "Grantee" (whether one or more), whose mailing address is 10431 Springcroft Court, **Helotes, TX 78023**, the receipt and sufficiency of which are hereby acknowledged and confessed;

Grantor has **GRANTED, SOLD AND CONVEYED**, and by these presents does **GRANT, SELL AND CONVEY**, unto said Grantee, the following described real property, to-wit:

> **LOT 20, BLOCK 8, C.B. 4557, BRIDGEPOINT UNITS 8 & 15 ENCLAVE, A SUBDIVISION IN BEXAR COUNTY, TEXAS ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 9621, PAGE(S) 78 AND 79, DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS;**

TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereunto in anywise belonging, unto said Grantee, its successors and assigns, FOREVER. Grantor does hereby bind itself, its successors and assigns, TO WARRANT AND FOREVER DEFEND all and singular the said premises unto the said Grantee, its successors and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof, by, through, or under Grantor, but not otherwise.

This Deed is executed, delivered and accepted subject to all and singular any liens existing against the property, standby fees, ad valorem taxes for the current and all subsequent years, subsequent assessments for prior years due to changes in land usage or ownership, zoning ordinances, utility district assessments and standby fees, if any, applicable to and enforceable against the above described property, and all valid utility easements created by the dedication deed or plat of the subdivision in which said real property is located, covenants, restrictions common to the platted subdivision in which said real property is located, mineral reservations, maintenance fund liens, and any title or rights asserted by anyone, including, but not limited to, persons, corporations, governments or other entities to tidelands, or lands comprising the shores or beds of navigable or perennial rivers and streams, lakes, bays, gulfs or oceans, or to any land extending from the line of the harbor or bulkhead lines as established or changed by any government or to filled-in lands, or artificial islands, or to riparian rights or other statutory water rights, or the rights or interests of the State of Texas or the public generally in the area extending from the line of mean low tide to the line of vegetation or the right of access thereto, or right of easement along and across the same, if any, applicable to and enforceable against the above described property as shown by the records of the County Clerk of the County in which said real property is located.

WHEN this Deed is executed by more than one person, or when the Grantee is more than one person, the instrument shall read as though pertinent verbs, nouns and pronouns were changed correspondingly, and when executed by or to a corporation, the words, "heirs, executors and administrators" or "heirs and assigns" shall be construed to mean "successors and assigns". Reference to any gender shall include either gender and, in the case of a corporation, shall

EXHIBIT A

include the neuter gender, all as the case may be.

DATED this the 24th day of August, 2014.

**SELLER:**

**RH OF TEXAS LIMITED PARTNERSHIP, A MARYLAND LIMITED PARTNERSHIP**

By: _____

Officer: _Michael D. Parker_

Title: _Asst. Vice-President_

STATE OF TEXAS

COUNTY OF _Bexar_

This instrument was acknowledged before me on the _24th_ day of _October_, 2014,



By Michael D Parker, Asst. Vice President of Ryland Homes of Texas, Inc., General Partner of RH of Texas Limited Partnership, A Maryland Limited Partnership, a Texas Corporation.

_____
Notary Public, State of Texas
Notary's Name Printed: _____
My commission expires: _____

```
CAROL ANN BAKER
My Commission Expires
January 22, 2018
```

**RETURN TO:**
**ALI ZARGARAN AND MARYAM BAKER**

_____
_____

```
CAROL ANN BAKER
My Commission Expires
January 22, 2018
```

*WARRANTY DEED* – Page 2 of 2 Pages

Doc# 20140184615
# Pages 3
10/27/2014   7:32AM
e-Filed & e-Recorded in the
Official Public Records of
BEXAR COUNTY
GERARD C. RICKHOFF
COUNTY CLERK
Fees $30.00

STATE OF TEXAS
COUNTY OF BEXAR
This is to Certify that this document
was e-FILED and e-RECORDED in the Official
Public Records of Bexar County, Texas
on this date and time stamped thereon.
10/27/2014   7:32AM
COUNTY CLERK, BEXAR COUNTY TEXAS



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)
4-28-2014

## ONE TO FOUR FAMILY RESIDENTIAL CONTRACT (RESALE)

NOTICE: Not For Use For Condominium Transactions

**1. PARTIES:** The parties to this contract are <u>Ali R Zargaran and Maryam Baker</u>
(Seller) and <u>Ali Rafee</u>
(Buyer).
Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

**2. PROPERTY:** The land, improvements and accessories are collectively referred to as the "Property".
  A. LAND: Lot <u>20</u> Block <u>8</u>, <u>Bridgepoint Unit 8 & 15 CB 4557!</u>
  Addition, City of <u>Helotes</u>, County of <u>Bexar</u>,
  Texas, known as <u>10431 Springcroft Ct. Helotes, TX 78023</u>
  (address/zip code), or as described on attached exhibit.
  B. IMPROVEMENTS: The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items**, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property owned by Seller and attached to the above described real property.
  C. ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, and controls for: (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories.
  D. EXCLUSIONS: The following improvements and accessories will be retained by Seller and must be removed prior to delivery of possession:_____
  _____.

**3. SALES PRICE:**
  A. Cash portion of Sales Price payable by Buyer at closing ............................ $ <u>375,000.00</u>
  B. Sum of all financing described below (excluding any loan funding
  fee or mortgage insurance premium) ...................................................... $ <u>- 0 -</u>
  C. Sales Price (Sum of A and B).................................................................. $ <u>375,000.00</u>

**4. FINANCING (Not for use with reverse mortgage financing):** The portion of Sales Price not payable in cash will be paid as follows: (Check applicable boxes below)
☐ A. THIRD PARTY FINANCING: One or more third party mortgage loans in the total amount of $_____ (excluding any loan funding fee or mortgage insurance premium).
  (1) Property Approval: If the Property does not satisfy the lenders' underwriting requirements for the loan(s) (including, but not limited to appraisal, insurability and lender required repairs), Buyer may terminate this contract by giving notice to Seller prior to closing and the earnest money will be refunded to Buyer.
  (2) Credit Approval: (Check one box only)
  ☐ (a) This contract is subject to Buyer being approved for the financing described in the attached Third Party Financing Addendum for Credit Approval.
  ☐ (b) This contract is not subject to Buyer being approved for financing and does not involve FHA or VA financing.
☐ B. ASSUMPTION: The assumption of the unpaid principal balance of one or more promissory notes described in the attached TREC Loan Assumption Addendum.
☐ C. SELLER FINANCING: A promissory note from Buyer to Seller of $_____, secured by vendor's and deed of trust liens, and containing the terms and conditions described in the attached TREC Seller Financing Addendum. If an owner policy of title insurance is furnished furnish Seller with a mortgagee policy of title insurance.

Initialed for identification by Buyer _____ and Seller _____

EXHIBIT B

Contract Concerning ____10431 Springcroft Ct, Helotes, TX 78023_____ Page 2 of 9   4-28-2014
(Address of Property)

**5. EARNEST MONEY:** Upon execution of this contract by all parties, Buyer shall deposit
$___n/a___ as earnest money with _Trinity Title of Texas_, as escrow
agent, at ____11820 Bandera Rd. #102, Helotes, TX 78023____ (address). Buyer
shall deposit additional earnest money of $_____ with escrow agent within
____days after the effective date of this contract. If Buyer fails to deposit the earnest money as
required by this contract, Buyer will be in default.

**6. TITLE POLICY AND SURVEY:**
A. TITLE POLICY: Seller shall furnish to Buyer at ☒ Seller's ☐ Buyer's expense an owner policy
of title insurance (Title Policy) issued by _____ (Title
Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against
loss under the provisions of the Title Policy, subject to the promulgated exclusions (including
existing building and zoning ordinances) and the following exceptions:
   (1) Restrictive covenants common to the platted subdivision in which the Property is located.
   (2) The standard printed exception for standby fees, taxes and assessments.
   (3) Liens created as part of the financing described in Paragraph 4.
   (4) Utility easements created by the dedication deed or plat of the subdivision in which the
   Property is located.
   (5) Reservations or exceptions otherwise permitted by this contract or as may be approved
   by Buyer in writing.
   (6) The standard printed exception as to marital rights.
   (7) The standard printed exception as to waters, tidelands, beaches, streams, and related
   matters.
   (8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary
   lines, encroachments or protrusions, or overlapping improvements: ☒(i) will not be
   amended or deleted from the title policy; ☐(ii) will be amended to read, "shortages in area"
   at the expense of ☐Buyer ☐Seller.
B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract,
Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's
expense, legible copies of restrictive covenants and documents evidencing exceptions in the
Commitment (Exception Documents) other than the standard printed exceptions. Seller
authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer
at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are
not delivered to Buyer within the specified time, the time for delivery will be automatically
extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If, due to
factors beyond Seller's control, the Commitment and Exception Documents are not delivered
within the time required, Buyer may terminate this contract and the earnest money will be
refunded to Buyer.
C. SURVEY: The survey must be made by a registered professional land surveyor acceptable to
the Title Company and Buyer's lender(s). (Check one box only)
☐(1) Within _____ days after the effective date of this contract, Seller shall furnish to Buyer
   and Title Company Seller's existing survey of the Property and a Residential Real Property
   Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). **If Seller
   fails to furnish the existing survey or affidavit within the time prescribed, Buyer
   shall obtain a new survey at Seller's expense no later than 3 days prior to Closing
   Date.** If the existing survey or affidavit is not acceptable to Title Company or Buyer's
   lender(s), Buyer shall obtain a new survey at ☐Seller's ☐Buyer's expense no later than 3
   days prior to Closing Date.
☐(2) Within _____ days after the effective date of this contract, Buyer shall obtain a new
   survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual
   receipt or the date specified in this paragraph, whichever is earlier.
☐(3) Within _____ days after the effective date of this contract, Seller, at Seller's expense
   shall furnish a new survey to Buyer.
D. OBJECTIONS: Buyer may object in writing to defects, exceptions, or encumbrances to title:
disclosed on the survey other than items 6A(1) through (7) above; disclosed in the
Commitment other than items 6A(1) through (8) above; or which prohibit the following use
or activity: _____
_____
Buyer must object the earlier of (i) the Closing Date or (ii) _____ days after Buyer receives
the Commitment, Exception Documents, and the survey. Buyer's failure to object within the
time allowed will constitute a waiver of Buyer's right to object; except that the requirements
in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated
to incur any expense, Seller shall cure the timely objections of Buyer or any third party lender

Initialed for Identification by Buyer _____ and Seller _____         TREC NO. 20-12

Contract Concerning    10431 Springcroft Ct, Helotes, TX 78023                    Page 3 of 9   4-28-2014
                              (Address of Property)

within 15 days after Seller receives the objections and the Closing Date will be extended as necessary. If objections are not cured within such 15 day period, this contract will terminate and the earnest money will be refunded to Buyer unless Buyer waives the objections.

E. TITLE NOTICES:
   (1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.
   (2) MEMBERSHIP IN PROPERTY OWNERS ASSOCIATION(S): The Property ☐is ☐is not subject to mandatory membership in a property owners association(s). If the Property is subject to mandatory membership in a property owners association(s), Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community identified in Paragraph 2A in which the Property is located, you are obligated to be a member of the property owners association(s). Restrictive covenants governing the use and occupancy of the Property and all dedicatory instruments governing the establishment, maintenance, or operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instruments may be obtained from the county clerk. **You are obligated to pay assessments to the property owners association(s). The amount of the assessments is subject to change. Your failure to pay the assessments could result in enforcement of the association's lien on and the foreclosure of the Property.**
   Section 207.003, Property Code, entitles an owner to receive copies of any document that governs the establishment, maintenance, or operation of a subdivision, including, but not limited to, restrictions, bylaws, rules and regulations, and a resale certificate from a property owners' association. A resale certificate contains information including, but not limited to, statements specifying the amount and frequency of regular assessments and the style and cause number of lawsuits to which the property owners' association is a party, other than lawsuits relating to unpaid ad valorem taxes of an individual member of the association. These documents must be made available to you by the property owners' association or the association's agent on your request.
   **If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in a Property Owners Association(s) should be used.**
   (3) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.
   (4) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.
   (5) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.
   (6) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

Initialed for Identification by Buyer _____ and Seller _____          TREC NO. 20-12

Contract Concerning 10431 Springcroft Cr, Helotes, TX 78023 ___ Page 4 of 9  4-28-2014
(Address of Property)

(7) **PUBLIC IMPROVEMENT DISTRICTS:** If the Property is in a public improvement district, §5.014, Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local Government Code. The assessment may be due annually or in periodic installments. More information concerning the amount of the assessment and the due dates of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.
(8) **TRANSFER FEES:** If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.
(9) **PROPANE GAS SYSTEM SERVICE AREA:** If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

7. **PROPERTY CONDITION:**
   A. **ACCESS, INSPECTIONS AND UTILITIES:** Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.
   B. **SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice):** (Check one box only)
   ☐ (1) Buyer has received the Notice.
   ☐ (2) Buyer has not received the Notice. Within _____ days after the effective date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.
   ☐ (3) The Seller is not required to furnish the notice under the Texas Property Code.
   C. **SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS** is required by Federal law for a residential dwelling constructed prior to 1978.
   D. **ACCEPTANCE OF PROPERTY CONDITION:** "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.
   (Check one box only)
   ☐ (1) Buyer accepts the Property As Is.
   ☐ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: _____
   (Do not insert general phrases, such as "subject to inspections" that do not identify specific repairs and treatments.)
   E. **LENDER REQUIRED REPAIRS AND TREATMENTS:** Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.
   F. **COMPLETION OF REPAIRS AND TREATMENTS:** Unless otherwise agreed in writing: (i) Seller shall complete all agreed repairs and treatments prior to the Closing Date; and (ii) all required permits must be obtained, and repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. At Buyer's election, any transferable warranties received by Seller with respect to the repairs and treatments will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs and treatments prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete the repairs and treatments.
   G. **ENVIRONMENTAL MATTERS:** Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the

Initialed for Identification by Buyer _____ and Seller _____ TREC NO. 20-12

Contract Concerning ____10431 Springcraft Ct. Helotes, TX 78023_____ Page 5 of 9  4-28-2014
(Address of Property)

Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. **RESIDENTIAL SERVICE CONTRACTS:** Buyer may purchase a residential service contract from a residential service company licensed by TREC. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $____n/a____. Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

8. **BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

9. **CLOSING:**

A. The closing of the sale will be on or before ____November 27____, 20 14, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

B. At closing:
   (1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.
   (2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
   (3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
   (4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.
   (5) If the Property is subject to a residential lease, Seller shall transfer security deposits (as defined under §92.102, Property Code), if any, to Buyer. In such an event, Buyer shall deliver to the tenant a signed statement acknowledging that the Buyer has received the security deposit and is responsible for the return of the security deposit, and specifying the exact dollar amount of the security deposit.

10. **POSSESSION:**

A. Buyer's Possession: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☐upon closing and funding ☐according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**

B. Leases:
   (1) After the Effective Date, Seller may not execute any lease (including but not limited to mineral leases) or convey any interest in the Property without Buyer's written consent.
   (2) If the Property is subject to any lease to which Seller is a party, Seller shall deliver to Buyer copies of the lease(s) and any move-in condition form signed by the tenant within 7 days after the Effective Date of the contract.

11. **SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit licensees from adding factual statements or business details for which a contract addendum, lease or other form has been promulgated by TREC for mandatory use.)

   Seller to pay all closing costs

12. **SETTLEMENT AND OTHER EXPENSES:**

A. The following expenses must be paid at or prior to closing:
   (1) Expenses payable by Seller (Seller's Expenses):
      (a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.
      (b) Seller shall also pay an amount not to exceed $____n/a____ to be applied in the

Initialed for Identification by Buyer ____ and Seller ____  TREC NO. 20-12

Contract Concerning _____10431 Springcroft Ct, Helotes, TX 78023_____ Page 6 of 9  4-28-2014
(Address of Property)

following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.

(2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; adjusted origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.

B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS:** Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the effective date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

**18. ESCROW:**

A. ESCROW: The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.

B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may: (i) require a written release of liability of the escrow agent from all parties, (ii) require payment of unpaid expenses incurred on behalf of a party, and (iii) only deduct from the earnest money the amount of unpaid expenses incurred on behalf of the party receiving the earnest money.

C. DEMAND: Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of

Initialed for identification by Buyer ____ and Seller ____ M.G.            TREC NO. 20-12

Contract Concerning    10431 Springcroft Ct, Helotes, TX 78023                    Page 7 of 9   4-28-2014
                                (Address of Property)

the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.

D. **DAMAGES:** Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for liquidated damages in an amount equal to the sum of: (i) three times the amount of the earnest money; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

E. **NOTICES:** Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

19. **REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

20. **FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by applicable law, or if Seller fails to deliver an affidavit to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

21. **NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by facsimile or electronic transmission as follows:

**To Buyer at:** _____        **To Seller at:** 10431 Springcroft Ct
_____                                         Helotes, TX 78023
Telephone:   (011)31637526361         Telephone:   (954) 850-0058
Facsimile:   (    )                                Facsimile:   (    )
E-mail:  alirafiee2000@yahoo.es         E-mail:  JAZ12334@yahoo.com

22. **AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (Check all applicable boxes):

☐ Third Party Financing Addendum for Credit Approval

☐ Seller Financing Addendum

☐ Addendum for Property Subject to Mandatory Membership in a Property Owners Association

☐ Buyer's Temporary Residential Lease

☐ Loan Assumption Addendum

☐ Addendum for Sale of Other Property by Buyer

☐ Addendum for Reservation of Oil, Gas and Other Minerals

☐ Addendum for "Back-Up" Contract

☐ Addendum for Coastal Area Property

☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

☐ Seller's Temporary Residential Lease

☐ Short Sale Addendum

☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway

☐ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law

☐ Addendum for Property in a Propane Gas System Service Area

☐ Other (list): _____
_____
_____

Initialed for identification by Buyer _____ and Seller _____        TREC NO. 20-12

Contract Concerning _____ 10431 Springcroft Cr, Helotes, TX 78023 _____ Page 8 of 9  4-28-2014
                                    (Address of Property)

**23. TERMINATION OPTION:** For nominal consideration, the receipt of which is hereby acknowledged by Seller, and Buyer's agreement to pay Seller $ _____ (Option Fee) within 3 days after the effective date of this contract, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within _____ days after the effective date of this contract (Option Period). If no dollar amount is stated as the Option Fee or if Buyer fails to pay the Option Fee to Seller within the time prescribed, this paragraph will not be a part of this contract and Buyer shall not have the unrestricted right to terminate this contract. If Buyer gives notice of termination within the time prescribed, the Option Fee will not be refunded; however, any earnest money will be refunded to Buyer. The Option Fee ☐will ☐will not be credited to the Sales Price at closing. Time is of the essence for this paragraph and strict compliance with the time for performance is required.

**24. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate licensees from giving legal advice. READ THIS CONTRACT CAREFULLY.

Buyer's
Attorney is: _____          Seller's
                                      Attorney is: _____

                 _____                    _____

Telephone: ( )   _____       Telephone: ( )   _____

Facsimile: ( )   _____       Facsimile: ( )   _____

E-mail:          _____       E-mail:          _____

EXECUTED the _12_ day of __November__, 20_14_ (EFFECTIVE DATE).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

_____          _____
Buyer                    Seller

_____          _____
Buyer                    Seller

The form of this contract has been approved by the Texas Real Estate Commission.  TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov)
TREC NO. 20-12. This form replaces TREC NO. 20-11.

TREC NO. 20-12

| Contract Concerning | 10431 Springcroft.Ct;:Helotes, TX 78023 | | Page 9 of 9   4-28-2014 |
|---|---|---|---|
| | (Address of Property) | | |

## BROKER INFORMATION
(Print name(s) only. Do not sign)

**Other Broker Firm**     License No.

represents   ☐ Buyer only as Buyer's agent
    ☐ Seller as Listing Broker's subagent

**Name of Associate's Licensed Supervisor**   Telephone

**Associate's Name**   Telephone

**Other Broker's Address**   Facsimile

**City**   State   Zip

**Associate's Email Address**

**Listing Broker Firm**     License No.

represents   ☐ Seller and Buyer as an intermediary
    ☐ Seller only as Seller's agent

**Name of Associate's Licensed Supervisor**   Telephone

**Listing Associate's Name**   Telephone

**Listing Broker's Office Address**   Facsimile

**City**   State   Zip

**Listing Associate's Email Address**

**Selling Associate's Name**   Telephone

**Name of Selling Associate's Licensed Supervisor**   Telephone

**Selling Associate's Office Address**   Facsimile

**City**   State   Zip

**Selling Associate's Email Address**

Listing Broker has agreed to pay Other Broker_____of the total sales price when the Listing Broker's fee is received. Escrow agent is authorized and directed to pay other Broker from Listing Broker's fee at closing.

## OPTION FEE RECEIPT

Receipt of $_____ (Option Fee) in the form of _____ is acknowledged.

**Seller or Listing Broker**     Date

## CONTRACT AND EARNEST MONEY RECEIPT

Receipt of ☐ Contract and ☐ $_____ Earnest Money in the form of _____ is acknowledged.

Escrow Agent: _____   Date: _____

By: _____

    Email Address

Address _____   Telephone (___)_____

City _____ State _____ Zip _____   Facsimile: (___)_____

TREC NO. 20-12



APPROVED BY THE TEXAS REAL ESTATE COMMISSION (TREC)                    10-23-2013

## SELLER'S DISCLOSURE OF PROPERTY CONDITION

CONCERNING THE PROPERTY AT 10431 Spring Croft Ct., Helotes, TX 78023
                                                    (Street Address and City)

THIS NOTICE IS A DISCLOSURE OF SELLER'S KNOWLEDGE OF THE CONDITION OF THE PROPERTY AS OF THE DATE SIGNED BY SELLER AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE PURCHASER MAY WISH TO OBTAIN. IT IS NOT A WARRANTY OF ANY KIND BY SELLER OR SELLER'S AGENTS.

Seller ☒ is ☐ is not occupying the Property. If unoccupied, how long since Seller has occupied the Property?_____

1. The Property has the items checked below (Write Yes (Y), No (N), or Unknown (U)):

| | | |
|---|---|---|
| ✓ Range | ✓ Oven | ✓ Microwave |
| ✓ Dishwasher | Trash Compactor | ✓ Disposal |
| ✓ Washer/Dryer Hookups | ✓ Window Screens | ✓ Rain Gutters |
| ✓ Security System | ✓ Fire Detection Equipment | ✓ Intercom System |
| | ✓ Smoke Detector | |
| | ✓ Smoke Detector-Hearing Impaired | |
| | ✓ Carbon Monoxide Alarm | |
| | ✓ Emergency Escape Ladder(s) | |
| ✓ TV Antenna | ✓ Cable TV Wiring | Satellite Dish |
| ✓ Ceiling Fan(s) | ✓ Attic Fan(s) | Exhaust Fan(s) |
| ✓ Central A/C | ✓ Central Heating | Wall/Window Air Conditioning |
| ✓ Plumbing System | Septic System | ✓ Public Sewer System |
| ✓ Patio/Decking | Outdoor Grill | ✓ Fences |
| ✗ NONE | Sauna | Spa ___ Hot Tub |
| Pool Equipment | Pool Heater | Automatic Lawn Sprinkler System |
| ✓ Fireplace(s) & Chimney (Wood burning) | | Fireplace(s) & Chimney (Mock) |
| ✓ Natural Gas Lines | | ✓ Gas Fixtures |
| ___ Liquid Propane Gas: | ___ LP Community (Captive) | ~~on Property~~ |
| Garage: ✓ Attached | ___ Not Attached | Carport |

Garage Door Opener(s):        Electronic        ✗ Control(s)
Water Heater: ✓                ✓ Gas            ✓ Electric
Water Supply: ✓ City           ___ Well    ___ MUD    ___ Co-op
Roof Type: Shingle                          Age: 6 month (approx.)

Are you (Seller) aware of any of the above items that are not in working condition, that have known defects, or that are in need of repair? ☐ Yes ☒ No ☐ Unknown. If yes, then describe. (Attach additional sheets if necessary): _____

_____

_____

                                                                        TREC No. OP-H

Seller's Disclosure Notice Concerning the Property at 10431 Spring Croft Ct., Heloies, TX 78023
                                                     (Street Address and City)                Page 2  10-23-2013

2. Does the property have working smoke detectors installed in accordance with the smoke detector requirements of Chapter 766, Health and Safety Code? ☒ Yes ☐ No ☐ Unknown. If the answer to this question is no or unknown, explain. (Attach additional sheets if necessary): _____

_____

_____

* Chapter 766 of the Health and Safety Code requires one-family or two-family dwellings to have working smoke detectors installed in accordance with the requirements of the building code in effect in the area in which the dwelling is located, including performance, location, and power source requirements. If you do not know the building code requirements in effect in your area, you may check unknown above or contact your local building official for more information. A buyer may require a seller to install smoke detectors for the hearing impaired if: (1) the buyer or a member of the buyer's family who will reside in the dwelling is hearing impaired; (2) the buyer gives the seller written evidence of the hearing impairment from a licensed physician; and (3) within 10 days after the effective date, the buyer makes a written request for the seller to install smoke detectors for the hearing impaired and specifies the locations for the installation. The parties may agree who will bear the cost of installing the smoke detectors and which brand of smoke detectors to install.

3. Are you (Seller) aware of any known defects/malfunctions in any of the following? Write Yes (Y) if you are aware, write No (N) if you are not aware.

| | | |
|---|---|---|
| NO Interior Walls | N Ceilings | N Floors |
| No Exterior Walls | N Doors | N Windows |
| N Roof | N Foundation/Slab(s) | N Sidewalks |
| N Walls/Fences | N Driveways | N Intercom System |
| N Plumbing/Sewers/Septics | N Electrical Systems | N Lighting Fixtures |
| N Other Structural Components (Describe): | | |

_____

_____

If the answer to any of the above is yes, explain. (Attach additional sheets if necessary): _____

_____

_____

4. Are you (Seller) aware of any of the following conditions? Write Yes (Y) if you are aware, write No (N) if you are not aware.

| | |
|---|---|
| N Active Termites (includes wood destroying insects) | N Previous Structural or Roof Repair |
| N Termite or Wood Rot Damage Needing Repair | N Hazardous or Toxic Waste |
| N Previous Termite Damage | N Asbestos Components |
| N Previous Termite Treatment | N Urea-formaldehyde Insulation |
| N Previous Flooding | N Radon Gas |
| N Improper Drainage | N Lead Based Paint |
| N Water Penetration | N Aluminum Wiring |
| N Located in 100-Year Floodplain | N Previous Fires |
| N Present Flood Insurance Coverage | N Unplatted Easements |
| N Landfill, Settling, Soil Movement, Fault Lines | N Subsurface Structure or Pits |
| N Single Blockable Main Drain in Pool/Hot Tub/Spa* | N Previous Use of Premises for Manufacture of Methamphetamine |

If the answer to any of the above is yes explain. (Attach additional sheets if necessary): _____

_____

*A single blockable main drain may cause a suction entrapment hazard for an individual.

TREC No. OP-H

Seller's Disclosure Notice Concerning the Property at <u>10431 Spring Croft Ct., Helotes, TX 78023</u>                    Page 3   10-23-2013
                                                                (Street Address and City)

5.  Are you (Seller) aware of any item, equipment, or system in or on the Property that is in need of repair? ☐Yes (if you are aware)
    ☒No (if you are not aware)   If yes, explain. (Attach additional sheets if necessary): _____

    _____

6.  Are you (Seller) aware of any of the following?  Write Yes (Y) if you are aware, write No (N) if you are not aware.

    N   Room additions, structural modifications, or other alterations or repairs made without necessary permits or not in
        compliance with building codes in effect at that time.

    Y   Homeowners' Association or maintenance fees or assessments.  All up to Date

    Y   Any "common areas" (facilities such as pools, tennis courts, walkways, or other areas) co-owned in undivided interest with
        others.

    N   Any notices of violations of deed restrictions or governmental ordinances affecting the condition or use of the Property.

    N   Any lawsuits directly or indirectly affecting the Property.

    N   Any condition on the Property which materially affects the physical health or safety of an individual.

    N   Any rainwater harvesting system located on the property that is larger than 500 gallons and that uses a public water
        supply as an auxiliary water source.

    If the answer to any of the above is yes, explain. (Attach additional sheets if necessary): _____

    _____

    _____

7.  If the property is located in a coastal area that is seaward of the Gulf Intracoastal Waterway or within 1,000 feet of the mean high
    tide bordering the Gulf of Mexico, the property may be subject to the Open Beaches Act or the Dune Protection Act (Chapter 61
    or 63, Natural Resources Code, respectively) and a beachfront construction certificate or dune protection permit may be required
    for repairs or improvements. Contact the local government with ordinance authority over construction adjacent to public
    beaches for more information.

Signature of Seller                        11/19/14            Signature of Seller                        11/19/14
Ali R. Zargarian                           Date               Maryam Baker                                Date

The undersigned purchaser hereby acknowledges receipt of the foregoing notice.

Signature of Purchaser                     Date               Signature of Purchaser                     Date
Ali Rafiee

                                                                                          TREC No. OP-H

SCANNED

|||||||||||||||||||||||||||||||
P12-2014020177-2

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

### Special Warranty Deed

**Date:**   November 19, 2014

**Grantor:**     Ali R. Zargaran and Maryam Baker, husband and wife

**Grantor's Mailing Address:**

> Ali R. Zargaran and Maryam Baker
> 10431 Springcroft Ct.
> Helotes, TX 78023

**Grantee:**     Ali Rafiee

**Grantee's Mailing Address:**

> Ali Rafiee
> 10431 Springcroft Ct.
> Helotes, TX 78023

**Consideration:**

> Cash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

**Property (including any improvements):**

> LOT 20, BLOCK 8, C.B. 4557, BRIDGEPOINT UNITS 8 & 15 ENCLAVE, A SUBDIVISION IN BEXAR COUNTY, TEXAS ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 9621, PAGE(S) 78 AND 79, DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS

**Reservations from Conveyance:**

> None

**Exceptions to Conveyance and Warranty:**

> Validly existing easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded and validly existing instruments, other than conveyances of the surface fee estate, that affect the Property; and taxes for 2014, which Grantee assumes and agrees to pay, and subsequent assessments for that and prior years due to change in land usage, ownership, or both, the payment of which Grantee assumes.

> Grantor, for the Consideration and subject to the Reservations from Conveyance and the

Book 16969   Page 2085    2pgs

EXHIBIT C

Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and forever defend all and singular the Property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof when the claim is by, through, or under Grantor but not otherwise, except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

When the context requires, singular nouns and pronouns include the plural.

This instrument was prepared based on information furnished by the parties, and no independent title search has been made.

_____

Ali R. Zargaran

_____

Maryam Baker

STATE OF TEXAS              )

COUNTY OF BEXAR            )

This instrument was acknowledged before me on November 19 , 2014, by Ali R. Zargaran and Maryam Baker.

_____
Notary Public, State of Texas
My commission expires: 9/24/17

DENISE G. FIGUEROA
Notary Public, State of Texas
My Commission Expires
September 24, 2017

PREPARED IN THE OFFICE OF:

OLIVA SAKS GARCIA & CURIEL LLP
14255 Blanco Rd.
San Antonio, TX 78216
Tel: (210) 308-6600
Fax: (210) 308-6939



Any provision herein which restricts the sale, or use of the described real property because of race or color is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me and was duly RECORDED in the Official Public Records of Real Property of Bexar County, Texas on:

NOV 21 2014

COUNTY CLERK BEXAR COUNTY, TEXAS

Doc# 20140201177 Fees: $30.00
11/21/2014   8:49AM # Pages 2
Filed & Recorded in the Official
Public Records of   BEXAR  COUNTY
GERARD C. RICKHOFF  COUNTY CLERK



EXHIBIT D



EXHIBIT E

This instrument Prepared by and Return to:
(enclose self addressed stamped envelope)
　　Peter Port, Esq.
　　Fairway Title Company
　　3565 N.E. 163 Street
　　North Miami Beach, Florida 33160

OFF. 17466 PG 2154
REC.

96R575553 1996 DEC 19 11:28

Grantee S.S. No.: ▮▮▮▮
　　　　　　Name: MARYAM BAKER

Grantee S.S. No.:
　　　　　　Name:

DOC STP DEE     180.00 SURTX     0.00
HARVEY RUVIN, CLERK DADE COUNTY, FL

Parcel I.D. No.: 30-2205-051-2710

THIS SPACE FOR RECORDING DATA

# W A R R A N T Y   D E E D
## (Statutory)

**This Indenture** made this 17th day of December, 1996 BETWEEN **DOLORES BLAUSTEIN, a single woman, and MARTIN COHEN, a married man** , GRANTOR*, whose address is

and **MARYAM BAKER, a single woman** and , as GRANTEE*, of 1300 N.E. Miami Gardens Drive, #519E, North Miami Beach, Florida 33179

W I T N E S S E T H,   That said Grantor, for and in consideration of the sum of TEN AND 00/100'S ($10.00) Dollars and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt whereof is hereby acknowledged, has granted, bargained and sold to the grantee and grantee's heirs forever the following described land located in the County of DADE, State of Florida, to-wit:

**Condominium Parcel No. 519 of Tower East located on the Fifth Floor of THE WILSHIRE CONDOMINIUM according to the Declaration of Condominium thereof as recorded in Official Records Book 9268, Page 1633 of the Public Records of DADE County, Florida, together with any appurtenances thereon and amendments thereto, if any and together with the exclusive use of Parking Space No. 421.**

GRANTOR BY HIS EXECUTION HEREOF, HEREBY RATIFIES AND CONFIRMS THAT THE PROPERTY IS NOT NOW AND AT NO TIME HAS BEEN OR WAS INTENDED THE HOMESTEAD PROPERTY OF THE GRANOR, NOR OF ANY FAMILY MEMBER OF THE GRANTOR, NOR IS IR ADJACENT OR CONTIGUOUS THERETO, AND THAT HIS SPOUSE RESIDE AT:
AS TO MARTIN COHEN: 9830 MALVERN DR, TAMARAC, FL 33321
and said grantor does hereby fully warrant the title to said land, and will defend the same against the lawful claims of all persons whomsoever.

*Singular and plural are interchangeable as context requires.

IN WITNESS WHEREOF, Grantor has hereunto set grantor's hand and seal this day and year first above written.

Witnesses:

_____
Printed/Typed Name _____

_____
Printed/Typed Name _____

_____
Printed/Typed Name _____

_____
Printed/Typed Name _____

_____(SEAL)
**DOLORES BLAUSTEIN**

_____(SEAL)
**MARTIN COHEN**
9830 MALVERN DR, TAMARAC, FL 33321

_____(SEAL)

_____(SEAL)

_____[Space Below This Line For Acknowledgement]_____

STATE OF FLORIDA, DADE County ss:
I hereby certify that on this day, before me, an officer duly authorized in the state aforesaid and in the county aforesaid to take acknowledgements, personally appeared
DOLORES BLAUSTEIN, a single woman, and MARTIN COHEN, a married man,

to me known to be the person described in and who executed the foregoing instrument and acknowledged that he/she executed the same for the purpose therein expressed.
and who presented _____ as identification and did/did not take an oath.

WITNESS my hand and official seal in the county and state aforesaid this 17th day of December, 1996.

STACEY C. KOPSAFTIS
COMMISSION # CC 520428
[illegible]
[illegible]

(SEAL)

_____
Notary Public
My Commission Expires:

EXHIBIT F

OFF. 17466 PG 2155
REC.

## CONSENT TO SALE

KNOW ALL MEN BY THESE PRESENTS that the Board of Directors of the WILSHIRE CONDOMINIUM ASSOCIATION, INC. a corporation not for profit under the laws of the State of Florida, did on the _____ day of _____ 199_ approved the sale of Condominium Unit No. _____, Building _ and approved the exclusive use of parking space no. _____ at North Miami Beach, Florida, from Condominium unit owner _____ to _____.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this _____ day of _____ 199_ as officer of said non-profit corporation.

ALL PARTIES TO THIS APPLICATION SHALL OBSERVE AND ARE BOUND BY THE CONDOMINIUM DOCUMENTS COVERED BY THE WILSHIRE CONDOMINIUM ASSOCIATION, INC.

WILSHIRE CONDOMINIUM ASSOCIATION, INC.

BY: _____
        Vice-President

BY: _____
        Officer

STATE OF FLORIDA    }
                    } ss
COUNTY OF DADE      }

Before me, the undersigned authority, personally appeared _____ and _____ as officers of The Wilshire Condominium Association, Inc. a Florida non-profit corporation, and they acknowledge before me that they executed the foregoing instrument as such officers for the use and purpose herein expressed and that said instrument is the act and deed of said corporation.

WITNESS my hand and official seal this ___ day of _____ 199_

_____
NOTARY PUBLIC, STATE OF FLORIDA
at large.

My Commission Expires:

```
┌─────────────────────────────────┐
│         NINA LAST               │
│ NOTARY PUBLIC, STATE OF FLORIDA │
│ My Commission Expires Jan. 21, 2000 │
│ I.D. # 736379    Comm.# CC 525933 │
└─────────────────────────────────┘
```

WILSHIRE CONDOMINIUM ASSOCIATION, INC.
1250 N.E. Miami Gardens Drive
North Miami Beach, Florida  33179
Tel.:  947-1418

RECORDED IN OFFICIAL RECORDS BOOK
OF DADE COUNTY, FLORIDA
RECORD VERIFIED
HARVEY RUVIN
CLERK CIRCUIT COURT



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)
~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~                    12-05-11

## SELLER'S TEMPORARY RESIDENTIAL LEASE

1. **PARTIES:** The parties to this Lease are Ali R. Zargaran and Maryam Baker (Tenant) (Landlord) and Ali Rifai (Landlord) _____ (Xanxxxx).

2. **LEASE:** Landlord leases to Tenant the Property described in the Contract between Landlord as Buyer and Tenant as Seller known as 10431 Spring Croft Ct., Helotes, TX 78023 _____ (address).

3. **TERM:** The term of this Lease commences on the date the sale covered by the Contract is closed and funded and terminates December 31, 2015 _____, unless terminated earlier by reason of other provisions.

4. **RENTAL:** Tenant shall pay to Landlord as rental $0.00 _____ per day (excluding the day of closing and funding) with the full amount of rental for the term of the Lease to be paid at the time of funding of the sale. Tenant will not be entitled to a refund of rental if this Lease terminates early due to Tenant's default or voluntary surrender of the Property.

5. **DEPOSIT:** Tenant shall pay to Landlord at the time of funding of the sale $0.00 _____ as a deposit to secure performance of this Lease by Tenant. Landlord may use the deposit to satisfy Tenant's obligations under this Lease. Landlord shall refund any unused portion of the deposit to Tenant with an itemized list of all deductions from the deposit within 30 days after Tenant (a) surrenders possession of the Property and (b) provides Landlord written notice of Tenant's forwarding address.

6. **UTILITIES:** Tenant shall pay all utility charges except _____ which Landlord shall pay.

7. **USE OF PROPERTY:** Tenant may use the Property only for residential purposes. Tenant may not assign this Lease or sublet any part of the Property.

8. **PETS:** Tenant may not keep pets on the Property except regular, domesticated animals _____.

9. **CONDITION OF PROPERTY:** Tenant accepts the Property in its present condition and state of repair at the commencement of the Lease. Upon termination, Tenant shall surrender the Property to Landlord in the condition required under the Contract, except normal wear and tear and any casualty loss.

10. **ALTERATIONS:** Tenant may not alter the Property or install improvements or fixtures without the prior written consent of the Landlord. Any improvements or fixtures placed on the Property during the Lease become the Property of Landlord.

11. **SPECIAL PROVISIONS:**

    It is agreed that as consideration for the purchase price of the property that no rent shall be payable during this temporary residential lease. It is further agreed that either party may terminate this lease at any time with 60 days written notice.

12. **INSPECTIONS:** Landlord may enter at reasonable times to inspect the Property. Tenant shall provide Landlord door keys and access codes to allow access to the Property during the term of Lease.

13. **LAWS:** Tenant shall comply with all applicable laws, restrictions, ordinances, rules and regulations with respect to the Property.

14. **REPAIRS AND MAINTENANCE:** Except as otherwise provided in this Lease, Tenant shall bear all expense of repairing and maintaining the Property, including but not limited to the yard, trees and shrubs, unless otherwise required by the Texas Property Code. Tenant shall promptly repair at Tenant's expense any damage to the Property caused directly or indirectly by any act or omission of the Tenant or any person other than the Landlord, Landlord's agents or invitees.

Initialed for identification by Landlord _____ and Tenant _____        TREC NO. 15-5

EXHIBIT G

Seller's Temporary Residential Lease  10431 Spring Croft Ct., Helotes, TX 78023                   Page 2 of 2      12-05-11
(Address of Property)

**15. INDEMNITY:** Tenant indemnifies Landlord from the claims of all third parties for injury or damage to the person or property of such third party arising from the use or occupancy of the Property by Tenant. This indemnification includes attorney's fees, costs and expenses incurred by Landlord.

**16. INSURANCE:** Landlord and Tenant shall each maintain such insurance on the contents and Property as each party may deem appropriate during the term of this Lease. NOTE: CONSULT YOUR INSURANCE AGENT; POSSESSION OF THE PROPERTY BY SELLER AS TENANT MAY CHANGE INSURANCE POLICY COVERAGE.

**17. DEFAULT:** If Tenant fails to perform or observe any provision of this Lease and fails, within 24 hours after notice by Landlord, to commence and diligently pursue to remedy such failure, Tenant will be in default.

**18. TERMINATION:** This Lease terminates upon expiration of the term specified in Paragraph 3 or upon Tenant's default under this Lease.

**19. HOLDING OVER:** Tenant shall surrender possession of the Property upon termination of this Lease. Any possession by Tenant after termination creates a tenancy at sufferance and will not operate to renew or extend this Lease. Tenant shall pay $0.00 per day during the period of any possession after termination as damages, in addition to any other remedies to which Landlord is entitled.

**20. ATTORNEY'S FEES:** The prevailing party in any legal proceeding brought under or with respect to this Lease is entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees.

**21. SMOKE ALARMS:** The Texas Property Code requires Landlord to install smoke alarms in certain locations within the Property at Landlord's expense. Tenant expressly waives Landlord's duty to inspect and repair smoke alarms.

**22. SECURITY DEVICES:** The requirements of the Texas Property Code relating to security devices do not apply to a residential lease for a term of 90 days or less.

**23. CONSULT YOUR ATTORNEY:** Real estate licensees cannot give legal advice. This Lease is intended to be legally binding. READ IT CAREFULLY. If you do not understand the effect of this Lease, consult your attorney BEFORE signing.

**24. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by facsimile or electronic transmission as follows:

To Landlord: Ali Rafiee                          To Tenant: Ali R. Zargaran and Maryam Baker

10431 Springcroft Ct.                            10431 Springcroft Ct.
Helotes, TX 78023                                Helotes, TX 78023

Telephone: +31637526361                          Telephone: 954-850 0058
Facsimile:                                       Facsimile: JAZ 12334@Yahoo.Com
E-mail: alirafiee2000@yahoo.es                   E-mail:

Landlord Ali Rafiee                              Tenant Ali R. Zargaran

Landlord                                         Tenant Maryam Baker

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 512-936-3000 (http://www.trec.texas.gov) TREC NO. 15-5. This form replaces TREC NO. 15-4.

TREC NO. 15-5